UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA TOOLE,

       Plaintiff,

v.

LAKESHORE EAR, NOSE, AND
THROAT CENTER, P.C., a professional
corporation,

       Defendant.

Case No. 21-CV-11850
Hon.

_____/

Sarah S. Prescott (P70510)
Nakisha Chaney (P65066)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
*Attorneys for Plaintiff*
105 East Main Street
Northville, MI 48167
(248) 679-8711
*prescott@spplaw.com*
*chaney@spplaw.com*

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff Amanda Toole, by her attorneys Salvatore Prescott Porter & Porter, brings this Complaint for sex and race discrimination in violation of Title VII, 42 U.S.C. § 2000e-2; the Equal Pay Act, 29 U.S.C. § 206(d); and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2202.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Amanda Toole, M.D. (referred to herein as "Plaintiff" or "Dr. Toole," is an individual who resides in Clinton Township, Michigan.

2. Defendant Lakeshore Ear, Nose, and Throat Center, P.C. (referred to herein as "Lakeshore ENT") is a professional corporation with a principal place of business in St. Clair Shores, Michigan.

3. This Court has original jurisdiction over Plaintiff's federal claims under 29 U.S.C. § 626, 28 U.S.C. § 1343, and 28 U.S.C. § 1331.

4. The Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

5. Pursuant to 28 U.S.C. § 1391(b), venue lies in the Eastern District of Michigan as the events giving rise to this action occurred in St. Clair Shores, Michigan.

## GENERAL ALLEGATIONS

6. Lakeshore ENT is a metropolitan-Detroit otolaryngology center that provides comprehensive ear, neck and throat medical care, with surgical subspecialties in skin, head, neck, sinus and facial plastic surgery.

7. For decades, Lakeshore ENT has hired physicians who specialize in ear, nose and throat surgery.

2

8. Dr. Toole is a board-certified and fellowship-trained otolaryngologist and head and neck surgeon who, in 2001, Lakeshore ENT hired to provide medical care to its patients.

9. As an employee, Dr. Toole had no ability to control compensation or personnel decisions, nor did she participate in Lakeshore's management.

10. Dr. Toole, who is a black woman, was Lakeshore ENT's only female and only black physician-surgeon.

11. Dr. Toole was an outstanding practitioner and contributor at Lakeshore ENT.

12. For years, Dr. Toole brought in more business than anyone else in the practice.

13. She consistently maintained a high patient load and developed a strong referral pipeline from which Lakeshore ENT profited.

14. Dr. Toole's productivity far exceeded those of her peers as measured by her wRVUs.

15. A wRVU, or work relative value unit, is a measurement of value used within the medical field to objectively quantify and compare a physician's productivity.

16. Physician and practice compensation models are frequently based on wRVUs.

17. Lakeshore ENT routinely uses and references wRVUs to measure physician productivity, associating higher wRVUs with higher productivity, higher revenue and higher physician compensation.

18. In fact, Lakeshore ENT itself is compensated by the hospital(s) to which it provides services based on its RVUs at the rate agreed upon in a given year.

19. In 2017, 2018 and 2019, Dr. Toole had the highest work relative value units (wRVUs) than anyone in the practice, at times exceeding her peers by a substantial margin.

20. In addition to her unmatched productivity, Dr. Toole served on hospital committees including the Tumor Board and Peer Review Committees, supported the hospital residency programs in which she taught and participated daily, lectured, and was regularly named as a "Top Doc" in Hour Detroit Magazine, raising Lakeshore ENT's profile in doing so.

21. Despite her superior performance, Dr. Toole was systematically paid substantially less compensation than her white male counterparts, including those who were objectively less productive.

22. For example, in 2018, Dr. Toole, an otolaryngologist and head/neck surgeon, was paid $39.98 per wRVU. In contrast, white male physicians were compensated substantially more:

| Physician | Compensation per wRVUs |
|---|---|
| Daniel Megler, M.D. *otolaryngologist* | $47.75 per wRVU |
| Andrew Dzul, M.D. *otolaryngologist* | $44.12 per wRVU |
| Robert Fishman, M.D. *pediatrics* | $54.73 per wRVU |
| Adam Rubin, M.D. *laryngologist* | $44.36 per wRVU |
| Robert Brammer, M.D. *neurologist* | $46.61 per wRVU |
| Michael Fozo, M.D. *otolaryngologist, facial surgeon* | $52.69 per wRVU |

23. In 2018, as measured by her percentage of collections, Dr. Toole was paid 59.96% of collections. By contrast, Dr. Megler (69.66%), Dr. Dzul (61.3%), and Dr. Fishman (72.6%) were paid significantly more.

24. Dr. Toole continued to be compensated less. For example in 2019, whereas Dr. Toole was paid $40.11 per wRVU and 57.3% of her collections, Dr. Fishman was paid 62.61% of collections and $47.57 per wRVU.

25. Lakeshore ENT has been unable to provide any legitimate justification for why its then-only female and only black surgeon consistently made less money than multiple white male counterparts despite having objectively higher productivity and, during the relevant time, was bringing in more business than anyone in the practice.

5

26. In addition, Dr. Toole Lakeshore ENT more deeply discounted Dr. Toole's time away from work than it did her male peers, and she received no or lesser addition to her pay for activities supporting the practice, including with her patient referral pipeline, than similarly situated males received.

27. As a result, Dr. Toole has suffered substantial financial loss, as well as, among other things, embarrassment, frustration, and stress.

28. In August 2020, Dr. Toole filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), for which the EEOC issued a right to sue notice on May 20, 2021.

29. Dr. Toole timely filed this action.

## COUNT I
## RACE AND SEX DISCRIMINATION
## TITLE VII, 42 U.S.C. § 2000e-2

30. Plaintiff incorporates here all previously stated allegations.

31. Lakeshore ENT is, within the meaning of Title VII, an "employer" engaged in an industry affecting commerce who has fifteen or more employees.

32. Plaintiff is, within the meaning of Title VII, an "employee," employed by Lakeshore ENT.

33. Plaintiff, who is a black woman, is a member of a protected class.

34. Plaintiff is a board-certified otolaryngologist and head and neck surgeon who was qualified for her job.

35. Lakeshore ENT employed Plaintiff to provide specialized medical services to its patients.

36. Plaintiff was consistently paid substantially less compensation than similarly-situated white male physicians, who are, like Plaintiff, specialists in otolaryngology and/or head and neck surgery, were subject to the same management and standards (except as they were disparately applied to Plaintiff), and were engaged in the same work in all relevant respects, including the provision of specialty medical services.

37. As a result of race and gender, Plaintiff was paid less money than one or more white men who performed work that was the same or substantially similar in skill, effort, responsibility and working conditions.

### COUNT II
### UNEQUAL PAY
### EQUAL PAY ACT (EPA), 29 U.S.C. § 206(d)

38. Plaintiff incorporates here all previously stated allegations.

39. To "employ" within the meaning of the EPA, includes "to suffer or permit to work." 29 U.S.C. § 203(g).

40. Lakeshore ENT is an "employer," and Plaintiff was its "employee," within the meaning of the EPA, 29 U.S.C. §§ 203, 206(d).

41. Pursuant to the EPA, no employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such

employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which employer pays wages to employees of the opposite sex in such establishment for equal work on jobs. 29 U.S.C. § 206(d).

42. In contravention of the EPA, Lakeshore ENT paid Plaintiff less money than one or more men who performed work that was the same or substantially similar in skill, effort, responsibility and working conditions.

43. Defendant's deprivation of equal pay to Plaintiff was willful and unresolved even after Plaintiff complained.

## COUNT III
## RACE AND SEX DISCRIMINATION
## MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2202

44. Plaintiff incorporates here all previously stated allegations.

45. Defendant is an employer within the meaning of the Elliott-Larsen Civil Rights Act (ELCRA), M.C.L. § 37.2201(a).

46. ELCRA prohibits an employer from discriminating against an employee in compensation on the basis of sex or race.

47. Plaintiff, as a black woman, is a member of a protected class.

48. Lakeshore ENT violated ELCRA by paying Plaintiff less money because of her race and sex.

## **RELIEF REQUESTED**

Plaintiff seeks all available relief against Defendant, including:

a. back wages;

b. compensatory damages;

c. liquidated damages;

d. exemplary/punitive damages;

e. attorney fees, costs and interest; and

f. all other appropriate legal and equitable relief.

|  |  |
|---|---|
|  | Respectfully submitted,<br>SALVATORE PRESCOTT PORTER &<br>PORTER, PLLC |
| Dated: August 10, 2020 | /s/ Nakisha N. Chaney<br>Sarah S. Prescott (P70510)<br>Nakisha N. Chaney (P65066)<br>Attorney for Plaintiff<br>105 East Main Street<br>Northville, MI 48167<br>(248) 679-8711<br>chaney@sppplaw.com |

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial in the above-captioned matter.

|  |  |
|---|---|
|  | Respectfully submitted,<br>SALVATORE PRESCOTT PORTER & PORTER, PLLC |
| Dated:   August 10, 2021 | /s/ Nakisha N. Chaney_____<br>Nakisha N. Chaney (P65066)<br>Attorney for Plaintiff<br>(248) 679-8711<br>chaney@spplaw.com |